UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RUBEN ALBERTO,<br>        Plaintiff,<br><br>        v.<br><br>MASSACHUSETTS DEPARTMENT OF<br>CORRECTION,<br>DOCTOR FREDRICKSON, and<br>BROCKTON HOSPITAL,<br>        Defendants. | )<br>)<br>)<br>)  C.A. No.  05-10799-JLT<br>)<br>)<br>)<br>)<br>)<br>) |

MEMORANDUM AND ORDER

For the reasons stated below: 1) Plaintiff shall, within forty-two (42) days of the date of this Memorandum and Order, either pay the $250.00 filing fee for civil actions, or file a completed Application to Proceed Without Prepayment of Fees, accompanied by a certified prison account statement; and 2) Plaintiff is directed to show cause within forty-two (42) days why this action should not be dismissed for the reasons stated herein.

FACTS

On April 14, 2005, Plaintiff Ruben Alberto, a state prisoner in custody at the Souza-Baronowski Correctional Center (S.B.C.C.) in Shirley, MA., filed his self-prepared § 1983 civil rights complaint against the Massachusetts Department of Corrections (DOC), Dr. Fredrickson, and the Brockton Hospital ("Hospital") with respect to medical treatment he received. Plaintiff alleges that Dr. Fredrickson and the Hospital were "acting in concert" with the DOC.

More specifically, on July 1, 2003, Plaintiff and another inmate were involved in a fight within the prison yard. Complaint, ¶ 1. As a result of the fight, Plaintiff suffered injuries, including a tear on his left ear, which had been bitten off. Complaint, ¶ 14. Defendant Dr. Fredrickson operated on Plaintiff's ear at the Brockton Hospital. Complaint, ¶ 15.  Plaintiff

contends that his ear was put on ice by an agent of the DOC and brought to the hospital, but that piece of ear was not used, and he was therefore left with a visible "less than complete ear/scar." Complaint, ¶ 16.   He claims that Dr. Fredrickson failed to provide "adequate treatment of the injury..." Complaint, ¶ 17.   As a result, Plaintiff claims he feels stressed about his looks, cannot keep his hair short as he used to, does not want his children to visit him, constantly feels people are looking at him, and has developed "some kind of complex because of it..." Complaint, ¶ 18. He seeks monetary damages against the defendants.

Plaintiff did not pay the filing fee or file an Application to Proceed Without Prepayment of Fees.

## ANALYSIS

I. The Filing Fee

A party bringing a civil action must either (1) pay the $250.00 filing fee when filing the complaint, or (2) file an Application to Proceed Without Prepayment of Fees.  See 28 U.S.C. §§ 1914(a) (filing fees), 1915 (proceedings *in forma pauperis*).  Where the plaintiff is a prisoner, an application for waiver of prepayment of the filing fee must be accompanied by a document certifying the amount of funds on deposit to the plaintiff's credit at his institution of incarceration.  28 U.S.C. § 1915(a)(2).[1]

Plaintiff is advised that, unlike other civil litigants, prisoner plaintiffs are not entitled to a complete waiver of the $250 filing fee,  notwithstanding the grant of *in forma pauperis* status.

---

[1] For the convenience of litigants, this court provides a standardized form for fee waiver applications, in which the applicant is directed to attach a ledger sheet from the institution of incarceration showing prison account transactions for the six months prior to the date of the complaint.

Rather, prisoner plaintiffs must pay the full amount of the filing fee, although such payments may be made in installments, payable through their prison accounts in accordance with the provisions of § 1915(b).

Accordingly, Plaintiff is Ordered to either pay the $250.00 filing fee, or in the alternative, file a completed Application to Proceed Without Prepayment of Fees, accompanied by his certified prison account statement, as required by § 1915. The clerk is directed to provide a blank Application form to Plaintiff, along with a copy of this Order.

If Plaintiff submits the filing fee in its entirety, or if he files a completed Application to proceed *in forma pauperis*, he is also directed to demonstrate good cause, within forty-two (42) days, why this action should not be dismissed for the reasons stated herein. If Plaintiff fails to submit a new application or to pay the filing fee, this action shall be dismissed without prejudice.

II. Order to Treasurer's Office at S.B.C.C.

To the extent that the Superintendent or the Treasurer's Office at S.B.C.C. requires a Court Order to provide Plaintiff with his prison account statement, it is hereby ORDERED that:

> The Treasurer's Office at S.B.C.C., or any other facility housing the Plaintiff shall, upon request by Plaintiff Alberto, provide this Court with a certified copy of Plaintiff's prison account statement. Such statement shall include balance information for the six (6) months preceding April 14, 2004 (date complaint was filed), and specifically include the following information: 1) the average monthly deposits to Plaintiff's prison account for that six (6) month period; and 2) the average monthly balance in Plaintiff's account for the six (6) month period immediately preceding April 14, 2004.

III. Plaintiff's Complaint is Subject to Screening

Because Alberto is a prisoner, he is advised that he is subject to the provisions of the

Prison Litigation Reform Act. The Prison Litigation Reform Act of 1995 ("PLRA"), Title VIII of Pub.L. 104-134, 110 Stat. 1321-1375 (1996), enacted several provisions which grant this Court the authority to screen and dismiss prisoner complaints. See 28 U.S.C. § 1915 (proceedings *in forma pauperis)*; 28 U.S.C. § 1915A (screening of suits against governmental officers and entities).

Section 1915 authorizes federal courts to dismiss actions in which a plaintiff seeks to proceed without prepayment of fees if the action lacks an arguable basis either in law or in fact, Neitzke v. Williams, 490 U.S. 319, 325 (1989), or if the action fails to state a claim on which relief may be granted or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2). *In forma pauperis* complaints may be dismissed *sua sponte* and without notice under § 1915 if the claim is based on an indisputably meritless legal theory or factual allegations that are clearly baseless. Id.; Denton v. Hernandez, 504 U.S. 25, 32-33 (1992).

Section 1915A also authorizes the Court to review prisoner complaints in civil actions that seek redress from a governmental entity or officers or employees of a governmental entity and to dismiss the action regardless of whether or not the plaintiff has paid the filing fee, if it lacks an arguable basis in law or fact, fails to state a claim, or seeks relief from a defendant immune from such relief. 28 U.S.C. § 1915A.

In this case, even construing Plaintiff's pleadings generously, Haines v. Kerner, 404 U.S. 519, 520 (1972), Alberto's action is subject to dismissal for the reasons stated below.

IV.    Failure to Exhaust Administrative Remedies.

To the extent that Plaintiff is complaining about the inadequacy of medical treatment

while imprisoned, it is deemed to be a complaint about the conditions of confinement, and as such, Plaintiff is required first to exhaust his administrative remedies within the prison.

Section 1997e(a) provides that no action shall be brought with respect to "prison conditions" under § 1983 by a prisoner "until such administrative remedies as available are exhausted." 42 U.S.C. § 1997e(a). Prison conditions, for purposes of § 1997e(a), have been broadly interpreted to include "all inmate suits about prison life." Porter v. Nussle, 534 U.S. 516, 532 (2002). Thus, Plaintiff's claims about his lack of proper medical treatment are subject to the exhaustion of remedies requirement. See id.; accord Menina-Claudio v. Rodriguez-Mateo, 292 F.3d 31, 34 (1st Cir. 2002). See also Booth v. Churner, 532 U.S. 731, 740 (2001) (a prisoner must exhaust all available administrative processes regardless of the relief offered through those procedures); accord Menina-Claudio, 292 F.3d 31, 35 (1st Cir. 2002)(no futility exception to the exhaustion requirement); cf. Casanova v. Dubois, 289 F.3d 142, 147 (1st Cir. 2002) (citation omitted) (although the exhaustion requirement is not jurisdictional, it is mandatory). The failure to exhaust stands as an adequate grounds to dismiss the case.

V.   Claims against the DOC

To the extent that Alberto asserts monetary claims against the Department of Corrections, the claims are subject to dismissal because the Department of Corrections, as an agency of the Commonwealth of Massachusetts, is not subject to suit in this Court, under the Eleventh Amendment.[2] Alabama v. Pugh, 438 U.S. 781, 781 (1978) (per curiam) (11th

---

[2]The Eleventh Amendment to the United States Constitution provides that:

The Judicial power of the United States shall not be construed to extend to any

Amendment generally is recognized as a bar to suits against a State, its departments, and agencies unless the State has consented to suit); Kentucky v. Graham, 473 U.S. 159, 167 n. 14 (1985) (citing Pugh) (unless a State has "waived its Eleventh Amendment immunity or Congress has overridden it,. . . a State cannot be sued directly in its own name regardless of the relief sought."); cf. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989) (neither state nor its officials are "persons" for purposes of § 1983); Quern v. Jordan, 440 U.S. 332, 344 (1979) (Congress did not override state's Eleventh Amendment immunity in enacting § 1983); Brown v. Newberger, 291 F.3d 89, 92 (1st Cir. 2002) (there has been no unequivocal abrogation of the Commonwealth's 11th Amendment immunity).  The Eleventh Amendment comes into play when "the judgment sought would expend itself on the public treasury ..., or interfere with the public administration...." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101-102, n. 11 (1984) (citations omitted); accord Hafer v. Melo, 502 U.S. 21, 25 (1991) (same).

VI.    Claims against Brockton Hospital.

Alberto alleges that Brockton Hospital "acted in concert" with the DOC.  The Court construes this to be alleging that there is a contractual relationship between the Hospital and the DOC, such that the Hospital may be considered to be a state actor for purposes of § 1983 liability. There is insufficient evidence presented to the Court at this time to make factual determination about the nature of the relationship between the DOC and the Hospital.  However, to the extent that the medical facility, by virtue of a contractual relationship with the DOC, can be considered a state

---

suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. Amend. XIV.

entity, agency or instrumentality, there would appear to be no subject matter jurisdiction because an agency of the Commonwealth is entitled to Eleventh Amendment immunity from suit in this Court, in accordance with the above discussion. Moreover, Plaintiff does not allege that the facility is not an alter ego of the Commonwealth of Massachusetts for Eleventh Amendment sovereign immunity purposes, or that Eleventh Amendment immunity has been waived under these circumstances. See, e.g., Varlaarhoven v. Newman, 564 F. Supp. 145 (D.R.I. 1983) (Selya, J.).[3]

Conversely, to the extent that the Hospital is not a state entity, agency, or instrumentality, but is a private organization, then there can be no governmental action, or action under color of state law, which would give rise to a § 1983 claim against the Hospital. Under either scenario, it appears that Plaintiff's § 1983 claims against Brockton Hospital would be subject to dismissal.

Finally, even if there was state action by the Hospital, Plaintiff could not sustain a § 1983 claim against the Hospital based on the alleged wrongful actions of Dr. Fredrickson or other unnamed medical staff; such claim would ultimately be subject to dismissal since liability under § 1983 is direct and not vicarious. See, e.g., Pinto v. Nettleship, 737 F.2d 130, 132 (1st Cir. 1984) (no *respondeat superior* liability under § 1983; liability can only be imposed upon officials who were involved personally in the deprivation of constitutional rights); accord Guzman v. City of Cranston, 812 F.2d 24, 26 (1st Cir. 1987) (same); Rodriguez-Vazquez v. Cintron-Rodriguez, 160 F. Supp. 2d 204, 210-213 (D. P.R. 2001). Here, Plaintiff has not alleged any facts whatsoever which would support a claim for direct liability of the Brockton Hospital.

Accordingly, Plaintiff's claims against Brockton Hospital are subject to dismissal.

---

[3]The Court makes no findings with respect to any claims which Plaintiff may present under the Massachusetts Tort Claims Act. M.G.L. ch. 258 § 4.

VII. <u>Claims against Dr. Fredrickson</u>

Even under a generous reading of the complaint, crediting all Plaintiff's allegations as true and making reasonable inferences from them in his favor, Plaintiff has not provided any factual support to make out a § 1983 claim against the defendant doctor, and thus has not met the sufficiency requirement to subject matter jurisdiction.[4] Because the deficiencies in the complaint also raise an issue whether this action may subsequently be dismissed for failure to state a claim upon which relief could be granted, both matters will be addressed together here.

In the prison context, when an inmate (or in this case former inmate) alleges that a prison official[5] violated his Eighth Amendment rights, the inmate "must prove that the [defendant's] actions amounted to "deliberate indifference to a serious medical need."" <u>DesRosiers v. Moran</u>, 949 F.2d 15, 18 (1st Cir. 1991) <u>citing</u> <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976); <u>See</u> <u>also</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994). Deliberate indifference has been defined as "conduct that offends evolving standards of decency in a civilized society." <u>DesRosiers</u>, 949 F.2d at 18, <u>citing</u> <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347 (1981), <u>Estelle</u>, 429 U.S. at 102-03.

---

[4]The First Circuit, in considering a motion to dismiss for lack of subject matter jurisdiction has used the "sufficiency challenge" method, which "accepts the plaintiff's version of jurisdictionally-significant facts as true and addresses their sufficiency, thus requiring the court to assess whether the plaintiff has propounded an adequate basis for subject-matter jurisdiction." <u>Valentin v. Hosp. Bella Vista</u>, 254 F.3d 358, 363 (1st Cir. 2001).

[5]Whether Dr. Fredrickson can be considered a state actor for purposes of § 1983 is not entirely clear in this case, because the nature of the contractual relationship with the prison is unknown at this time. However, defendant doctors, who may be private physicians but who are under contract with a prison to provide medical care to inmates, have been deemed to be properly sued as state actors under § 1983. <u>Brown v. Ionescu</u>, 2004 WL 2101962, at *3 (S.D.N.Y. September 21, 2004), <u>citing</u> <u>West v. Atkins</u>, 482 U.S. 42 (1988). For purposes of this discussion only, and without deciding the issue, the Court will address the § 1983 issues under the presumption that Dr. Fredrickson could be deemed a state actor.

In evaluating whether a deprivation constitutes "deliberate indifference," courts have looked to both objective and subjective components. See, Id. Objectively, there needs to be a "serious" deprivation. Subjectively, the deprivation must have been "brought about in wanton disregard of the inmate's rights." Id. citing Wilson v. Seiter, 501 U.S. 294 (1991). In evaluating the quality of medical care in prison, practical constraints facing prison officials must be considered. DesRosiers, 949 F.2d at 19. "...[I]nadvertent failures to provide medical care, even if negligent, do not sink to the level of deliberate indifference." Id. citing Whitley v. Albers, 475 U.S. 312, 319 (1986) (other citations omitted).

A "serious" medical need is one which involves a substantial risk of serious harm if it is not adequately treated. Kosilek v. Maloney, 221 F. Supp. 2d 156, 160 (D. Mass. 2002). Typically, it is a need that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Gaudreault v. Municipality of Salem, 923 F.2d 203, 208 (1st Cir. 1990).

Here, Plaintiff has not alleged he has a "serious medical need". As noted above, he alleges he "has a visible less than complete ear/scar." Complaint, ¶16. As a result, he feels "stressed" about his looks, cannot "keep his hair short as he is accustomed to", and does not want his children to visit him because he does not want them to worry about him. He constantly feels as if people are looking at him, and that "he now has some kind of complex because of it." Complaint, ¶17. These asserted allegations of the psychological ramifications of his scarring, without more, do not rise to this level.

In any event, even if it could be said that on these grounds Plaintiff has alleged a "serious medical need," he has nevertheless failed to plead sufficient facts from which "deliberate

indifference" on the part of any of the defendants can be inferred. A showing of deliberate indifference requires more than mere inadvertent, negligent, or even grossly negligent failure to provide medical care. See Farmer, 511 U.S. at 835. Such failures do not rise to the level of an Eighth Amendment violation. Estelle, 429 U.S. at 105, and an inmate is not entitled to the care of his choice. Courts must defer to the decisions of prison officials concerning what form of adequate care to provide an inmate but must still determine if the care being provided is minimally adequate. See Kosilek, 221 F. Supp. 2d at 160-161.

Thus, under this standard, Plaintiff's only allegation, i.e., that he received "inadequate treatment" at most, raises a medical malpractice claim, and not a § 1983 claim for deliberate indifference. A § 1983 claim based on medical care must allege more than medical malpractice. See, e.g., Estelle, 429 U.S. at 106 (disagreements between prisoners and doctors about the proper course of a prisoner's medical treatment or simple medical malpractice do not rise to the level of cruel and unusual punishment); DesRosiers, 949 F.2d at 19 (same); Ferranti v. Moran, 618 F.2d 888, 891 (1st Cir. 1980) (dismissing for failure to state a claim where party's challenge to medical care focused upon the quality and source of the medical treatment received). Here, Plaintiff simply has not alleged any factual basis to support an allegation of "inadequate treatment," let alone any facts which would support a "deliberate indifference" claim.

In light of the above, these claims are subject to dismissal for lack of jurisdiction (as well as the failure to state a claim upon which relief may be granted).

VIII. The State-Law Based Claims

Because Alberto's federal claim is subject to dismissal and grounds do not appear to exist for independent federal subject-matter jurisdiction over any state-law claims (such as negligence

or medical malpractice, this Court, in its discretion, would not exercise supplemental jurisdiction over any state law claims unless Plaintiff sets forth a cognizable federal claim in response to this Memorandum and Order.  See 28 U.S.C. § 1367(a).

## CONCLUSION

ACCORDINGLY, for the foregoing reasons, it is hereby ORDERED:

1. Within forty-two days (42) of the date of this Memorandum and Order, Plaintiff shall either pay the $250.00 filing fee, or he shall file an Application to Proceed Without Prepayment of Fees, accompanied by a certified prison account statement in accordance with 28 U.S.C. §1915(b).  Upon request by Plaintiff, the prison Treasurer's Office is directed to provide such statement to the Court, in accordance with this Memorandum and Order.

2. Plaintiff shall, within forty-two (42) days of the date of this order, show cause why this action should not be dismissed for the reasons stated herein.

Dated: May 4, 2005                     /s/ Joseph L. Tauro
                                       JOSEPH L. TAURO
                                       UNITED STATES DISTRICT JUDGE